In the Matter of PENN CENTRAL
TRANSPORTATION COMPANY,
Debtor.

Appeal of PENN CENTRAL
COMPANY.

No. 74–2301.

United States Court of Appeals,
Third Circuit.

Argued June 2, 1975.

Decided Aug. 4, 1975.

David Berger, Gerald J. Rodos, Paul J. McMahon, Edward H. Rubenstone, Philadelphia, Pa., for appellant Penn Central Co.

Charles A. Horsky, Covington & Burling, Washington, D. C., Paul R. Duke, Penn Central Transportation Co., Philadelphia, Pa., for Penn Central Trustees.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Penn Central Company, sole stockholder and an unsecured creditor of the debtor Penn Central Transportation Company, appeals from Order No. 1698 of the reorganization court which enjoins it from prosecuting a suit asserting a claim solely on its own behalf, against the United States in the Court of Claims pursuant to the Tucker Act.[1] 28 U.S.C. § 1491. We conclude that the reorganization court had neither statutory nor equitable power to enjoin proceedings in the Court of Claims which did not affect any property or interest of the debtor, and thus we reverse.

In January 1974 Congress enacted the Regional Rail Reorganization Act, 45 U.S.C. § 701 *et seq.* That enactment was challenged in several courts on the ground that by requiring railroads in reorganization to continue deficit operations over extended periods, it effected an uncompensated taking of the property of the debtor, its creditors, and its shareholders in violation of the fifth amendment.

On April 10, 1974, Penn Central Company filed a petition in the Court of Claims against the United States alleging an "erosion taking" of the estate. Since the petition as originally drawn asserted not only any "erosion taking" claim which might belong to Penn Central Company itself, but also the claim for injury to the debtor's estate, the trustees in reorganization sought an order from the reorganization court enjoining the Court of Claims action. Thereupon, on May 17, 1974, Penn Central Company filed an amended petition seeking only the difference between the value of its interests and holdings in the debtor on February 8, 1973 (the date alleged to be the beginning of governmentally mandated erosion) and the present value thereof. It appears that the filing of the amended Court of Claims petition on April 10, 1974 resulted from a difference in viewpoint between the attorneys for the trustees in reorganization and the attorneys for Penn Central Company over the timing of the pursuit of a then rather problematical Tucker Act remedy for "erosion taking." Although that difference persists, it is clear that in the amended petition Penn Central Company has abandoned the pursuit of any claim belonging to the debtor. (App. at 1a–6a).

On October 22, 1974 the reorganization court entered Order No. 1698 enjoining the Court of Claims action. In its opinion in support of that injunction, the court based its action on two principal grounds. First, in expressing some skepticism as to whether Penn Central Company actually could assert any separate "erosion taking" claim, the court stated:

> "Assuming, without deciding, that parties injured by a less-then-totally-successful reorganization outcome may have a cause of action for the reason alleged by Penn Central; it seems self-evident that the assertion of such a cause of action at this time by anyone other than the Trustees is at least premature." (App. at 8a).

We are not certain if this sentence was intended to suggest that Penn Central

---

1. *Penn Central Co. v. United States,* No. 129–74 (Ct.Cl., filed Apr. 10, 1974).

Company was actually still pressing the debtor's cause of action, or to suggest that the trustees could assert a Penn Central Company claim, or to suggest that the assertion by Penn Central Company of its own cause of action at this time was premature. The amended Court of Claims petition seems to us to have unequivocally abandoned any attempted assertion of a claim for erosion to the debtor's estate. Whether in its amended form it actually states a claim upon which relief could be granted to Penn Central Company is quite another matter; a matter which the Court of Claims is competent to decide. Since, in its amended form, the petition asserts a cause of action, for whatever it is worth, belonging to Penn Central Company, and not to the debtor, it is not a claim that the trustees in reorganization may advance now or anytime hereafter. And if Penn Central Company decides to waste time and effort in the pursuit of a cause of action which has not sufficiently ripened, we do not see how that prematurity concerns the debtor, the estate, or the reorganization court.

The second reason advanced in support of the injunction by the reorganization court was the state of confusion existing then over the availability of a Tucker Act remedy. The court wrote:

"Moreover, I am persuaded that to permit the Penn Central litigation in the Court of Claims to proceed at this time would be irresponsible, if for no other reason than the existing confusion as to the nature and extent of possible remedies under the Tucker Act, and the consequent uncertainty as to the possible adverse effects of the Penn Central litigation (res judicata, collateral estoppel, double recovery, etc.) upon claims which others, including the Trustees, may be held entitled to assert." (App. at 8a).

The reorganization court then referred to the several cases in which challenges to the constitutionality of the Regional Rail Reorganization Act were pending and noted that one of them, Connecticut General Insurance Corp. v. United States Railway Ass'n, 383 F.Supp. 510 (E.D.Pa. 1974), was scheduled for argument on the next day, October 23, 1974, in the Supreme Court. On December 16, 1974 the Supreme Court held that there was a Tucker Act remedy for "erosion taking," and that in view of this remedy, the Regional Rail Reorganization Act was constitutional. Regional Rail Reorganization Act Cases, 419 U.S. 102, 136, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

It is difficult to follow the reorganization court's second reason for granting an injunction. Certainly there was confusion prior to December 16, 1974, as to whether the Regional Rail Reorganization Act eliminated or left intact whatever remedy the Tucker Act provides for "erosion taking." Prior to that date, the three-judge district court in Connecticut General, supra, had held that there was no such remedy, while the Special Court created under § 209(b) of the Regional Rail Reorganization Act had decided just the opposite. In re Penn Central Transportation Co., 384 F.Supp. 895 (Spec.Ct. 1974). An opinion by the Court of Claims on the existence or scope of a Tucker Act remedy for an "erosion taking" would have been for the Supreme Court perhaps informative, certainly not dispositive, and undoubtedly confusing. In any case the Court's decision in the Regional Rail Reorganization Act Cases, supra, has dispelled the confusion.

As to the consequent uncertainty concerning possible adverse effects upon the claims of other parties, we see none except whatever stare decisis authority a decision by the Court of Claims might carry. Penn Central Company cannot litigate a claim belonging to the debtor or to third parties, and does not attempt to do so in the amended Court of Claims petition. Its success or failure in that action will have neither res judicata nor collateral estoppel effects upon the trustees in reorganization or upon third parties in whom the reorganization court has any interest. As to double recovery, we must assume that the Court of Claims will be quite able to decide where Penn Central Company's claim, if any,

begins, and where that of the debtor's estate ends.

▇ Thus, the narrow issue is whether a railroad reorganization court can enjoin the prosecution, by a stockholder of the debtor in another court, of an action alleging a claim belonging to the stockholder and not the debtor, for the reason that the litigation in the other court might produce a precedent troublesome for the trustees. We hold that a railroad reorganization court may not do so.

▇ A railroad reorganization court draws its power to issue injunctions from several sources. That court has the same exclusive control over the administration of property, real or personal, tangible or intangible, which comprises a railroad debtor's estate, as would a trustee in bankruptcy.[2] That exclusive control may not be challenged by other courts, state or federal.[3] The court also has by virtue of § 77(a) of the Bankruptcy Act, 11 U.S.C. § 205(a), "all powers . . . which a court of the United States would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." This provision includes the power to enjoin interference with property in which the debtor has an interest which would hinder, obstruct, and delay preparation and consummation of a plan.[4] It has the authority granted by § 11 of the Bankruptcy Act, 11 U.S.C. § 29, to stay all suits against the debtor, and the power granted by § 77(j), 11 U.S.C. § 205(j), to enjoin any judicial proceeding to enforce any lien upon the estate until after final decree. Finally, the railroad reorganization court has the same authority as is granted to federal courts generally by the All Writs Act, 28 U.S.C. § 1651.[5] Such power to issue process in aid of its jurisdiction is specifically authorized by § 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11(a)(15).[6]

With the arguable exception of § 2a(15), which will be discussed presently, none of the Bankruptcy Act's sources of power to issue an injunction sustain its issuance in this case. The Penn Central Company's amended petition in the Court of Claims does not interfere in any way with the reorganization court's administration of the debtor's property, or with the trustees' prosecution of causes of action which are included in that estate. Nor does the formulation of a plan of reorganization under the Regional Rail Reorganization Act depend in any way upon the outcome of the Penn Central Company's lawsuit. Rather, it is the viability of the latter action in the Court of Claims which might be affected by proceedings under the Regional Rail Reorganization Act. The Court of Claims proceeding is neither a suit against the debtor nor a suit to enforce a lien upon the debtor's estate. Thus, if there is authority to sustain the issuance of an injunction in the circumstances of this case, it must derive from either the All Writs Act which authorizes issuance of "all writs necessary or appropriate in aid of [the reorganization court's] jurisdiction and agreeable to the usages and principles of law", 28 U.S.C. § 1651, or from § 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11(a)(15) which we have already quoted in the margin.[7]

▇ It is well-established that these latter provisions permit a bankruptcy court to issue injunctions against pro-

---

2. *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

3. *Continental Illinois Nat. Bank & Trust Co. v. Chicago, R.I. & P.R. Co.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935).

4. *Id.* at 675, 55 S.Ct. at 605.

5. *Steelman v. All Continent Corp.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937).

6. § 2a(15), 11 U.S.C. § 11(a)(15) authorizes a bankruptcy court to:

"Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: *Provided, however,* That an injunction to restrain a court may be issued by the judge only . . . ." (emphasis in original).

7. *See* note 6, *supra.*

ceedings in other courts which would defeat its jurisdiction to adjudicate completely,[8] or would embarrass its administration of the estate.[9] There is, however, no jurisdiction in the reorganization court to adjudicate the Tucker Act claim which Penn Central Company asserts, since jurisdiction over that claim rests exclusively in the Court of Claims.[10] And by hypothesis, the Penn Central Company claim is no part of the estate being administered by the reorganization court.

If there is embarrassment to the reorganization proceedings from the potential stare decisis effect of the Penn Central Company litigation, it is an embarrassment which will arise not in the reorganization court's administration of the debtor's estate, but in the trustees' litigation in the Court of Claims, the only court in which the trustees can pursue a Tucker Act remedy for "erosion taking." The injunction issued below would thus appear to be in aid of the jurisdiction of the Court of Claims rather than in aid of the jurisdiction of the reorganization court. No authority has come to our attention which permits resort to either the All Writs Act or § 2a(15) of the Bankruptcy Act for such a purpose.

The trustees also rely on appeal to Order No. 1 in the bankruptcy proceedings, which enjoined all persons from interfering in any manner with properties of, or premises belonging to, or in the possession of the debtor. However, Order No. 1 does not cover the claim asserted in the amended Court of Claims petition. If it did, it would be as defective as we have found Order No. 1698 to be.

We recognize that Penn Central Company's separate pursuit of a Tucker Act remedy may well prove to be chimerical, since it is generally held that a stockholder does not have standing to assert

the indirect harm to him of diminution in value of his shares resulting from an injury inflicted on the corporation.[11] But that is the proper concern of the directors of Penn Central Company, not of the trustees in reorganization of Penn Central Transportation Company or of the reorganization court.

We recognize, as well, that the filing of the original and amended Court of Claims petitions may well have been motivated as much by a desire to dramatize the differences in approach to the problems posed by the Regional Rail Reorganization Act between the attorneys for the trustees and the attorneys for Penn Central Company as by a genuine hope that the Court of Claims would afford the relief requested. That, we think, is the kind of annoyance which in one form or another is probably among the inevitable features of a reorganization proceeding of this size and complexity. It is not, however, a ground for injunctive relief staying a lawsuit by a third party in another court against an unrelated defendant.

Order No. 1698 will be reversed.

SEITZ, Chief Judge (dissenting).

The majority opinion is premised on the assumption that the shareholder claim of Penn Central Company for diminution in the value of its stock is separate and distinct from the trustees' potential Tucker Act claims for erosion of the assets of the debtor. Indeed, the majority states that "it is not a claim that the trustees in reorganization may advance now or anytime hereafter." Such a view ignores the reality that the sole foundation of the shareholder claim here is the "substantial erosion of the estate of P.C.T.C." through the forced continuation of operations (amended petition). In my opinion, any claim for

---

8. *Continental Illinois Nat. Bank & Trust Co. v. Chicago, R.I. & P.R. Co.,* 294 U.S. at 675–76, 55 S.Ct. at 605–06.

9. *Steelman v. All Continent Corp.,* 301 U.S. at 289, 57 S.Ct. at 710.

10. It has not been suggested that the claim falls within 28 U.S.C. § 1346(a)(2), and no Tucker Act claim is pending in the district court.

11. *See, e. g., Kauffman v. Dreyfus Fund,* 434 F.2d 727, 732 (3d Cir. 1970).

diminution of stock value premised on erosion of assets is only derivative of the debtor's right to Tucker Act compensation and would be encompassed within any claim filed by the trustees. The trustees' recovery would be an asset available to the court in formulating a plan of reorganization that would determine shareholder interests in the debtor. Should the shareholder successfully assert a claim for monetary damages in the Court of Claims at this time, a portion of that asset would be removed from the control of the reorganization court, and the shareholder would have assured itself of a cash payment from the asset when in fact the reorganization plan might provide for some alternative treatment of shareholder rights.

Another potential interference with the reorganization proceedings arises from the fact that Penn Central Company's Court of Claims petition apparently seeks not only recovery as a shareholder but also compensation for damages incurred by the asset erosion in its status as an unsecured creditor of the Penn Central Transportation Company. The amended petition asserts that "[p]laintiff is also a creditor of P.C.T.C. in the approximate amount of $43 million" and seeks damages for the decline in value of its "interest and holdings" in the debtor. The prayer for relief is consistent with a claim for recovery as a creditor as well as a shareholder. Certainly any recovery in the status of a creditor would also amount to a direct interference with the functions of the reorganization court.

The reorganization court has a duty to protect the interests of shareholders as well as creditors in fashioning a plan of reorganization. *In re Chicago & N. W. Ry. Co.,* 121 F.2d 791 (7th Cir. 1941). Recognizing this obligation and cognizant of the potential for interference with the reorganization court's functions, I would hold that the court had the power to enjoin prosecution of the shareholder's claim at this time under § 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11(a)(15) and that it did not abuse its discretion in entering Order 1698.