**In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.**

**EASTERN AIR LINES, INC., Plaintiff,**

**v.**

**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO ("IAM"), et al., Defendants.**

**Bankruptcy Nos. 89 B 10448 (BRL), 89 B 10449 (BRL).**
**Adv. No. 89–5532A.**

United States Bankruptcy Court, S.D. New York.

Nov. 30, 1989.

952

Siff, Rosen & Parker, P.C., New York City (Mark S. Landman, William G. Ballaine, Amy Gallent, of counsel), for plaintiff.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Sheldon Engelhard, Larry Cary, Hanan B. Kolko, Ivan D. Smith, of counsel), Guerrieri, Edmond & James, Washington, D.C., for IAM.

Cohen, Weiss and Simon, New York City (Peter Herman, Richard N. Gilberg, of counsel), for ALPA and Henry A. Duffy.

O'Donnell & Schwartz, New York City (Malcolm A. Goldstein, Asher W. Schwartz, of counsel), for TWU, Local 553.

## REPORT AND RECOMMENDATION ON MOTION FOR ABSTENTION

BURTON R. LIFLAND, Chief Judge.

### ISSUE

Whether this Court should abstain from determining Eastern's Complaint and Motion for a preliminary injunction regarding activity in the states of Georgia and Florida.

### BACKGROUND

On March 22, 1989 Eastern Air Lines Inc. ("Eastern/Debtor") commenced the instant adversary proceeding against the International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") seeking a temporary restraining order to enjoin certain specified conduct. After an evidentiary hearing the same day, this Court entered a temporary restraining order and set a further March 29, 1989, preliminary injunction hearing. On March 23, 1989, a motion by the IAM for a stay of the hearing pending another motion for withdrawal of the reference was denied by District Court Judge Haight. A second temporary restraining order was issued by this Court on March 24, 1989 with regard to separate IAM activities at Logan Airport in Boston. The IAM appealed the second order to Judge Haight. In a telephonic hearing on March 25, 1989, Judge Haight declined to stay the injunctive proceedings. Pending final resolution of the injunctive adversary proceeding, the parties, mid evidentiary hearing, with the urging of this Court, entered into a stipulation of settlement. As a result the pending motions before Judge Haight including withdrawal of the reference were withdrawn. The proceeding was rekindled in July 1989 with the addition of numerous defendants including the Air Lines Pilots Association, International ("ALPA") and the Transport Workers Union of America ("TWU"). A new motion for withdrawal of the reference brought by the three Unions was denied by

District Court Judge Kram on July 21, 1989. (*See, In re Ionosphere Clubs, Inc.*, 103 B.R. 416 (S.D.N.Y.1989)).

Eastern filed its Verified Amended Complaint and application for a Temporary Restraining Order ("TRO") dated July 17, 1989, prohibiting ALPA, IAM and the TWU (collectively, the "Unions") from engaging in certain specified conduct. After hearing testimony, this Court granted the relief requested and entered a TRO enjoining the Unions from engaging in "illegal picketing" as outlined in the TRO. Subsequently, after a lengthy hearing involving over 75 witnesses, several thousands of pages of testimony, the documents, pleadings and video tapes placed into evidence, this Court entered its *Findings Of Fact And Conclusions Of Law*, granting Eastern's request for a preliminary injunction. 108 B.R. 901 (S.D.N.Y.). Specifically, this Court held pursuant to the Norris–LaGuardia Act, 29 U.S.C. § 107 and under the traditional standard for granting a preliminary injunction as follows:

(i) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained.

(ii) That substantial and irreparable injury will be continued unless restrained.

(iii) That as to each item of relief granted, greater injury will be inflicted upon Eastern by the denial of relief than will be inflicted upon the Unions by the granting of relief.

(iv) That Eastern has no adequate remedy at law.

(v) That the public officers charged with the duty to protect Eastern's property are unable or unwilling to furnish adequate protection.

(vi) A likelihood of success on the merits on the part of Eastern in establishing the harm to the reorganization was established.

(vii) The balance of hardships tips decidedly in favor of Eastern.

(viii) The injunction would not be adverse to the public interest and, in fact, the issuance of the injunction is in the public interest.

*See, Conclusions Of Law, supra,* at ¶ 66.

In the context of this adversary proceeding, the ALPA defendants have moved, pursuant to 28 U.S.C. § 1334(c), for this Court to abstain from exercising jurisdiction over these proceedings with respect to illegal labor activities taking place in Georgia and Florida, grounded on Eastern's earlier institution of separate actions in the Florida and Georgia state courts. Both the IAM and the TWU have joined in this request.

In accordance with the discussion to follow and the *Findings Of Fact And Conclusions Of Law* filed and entered on this date together with a Preliminary Injunctive Order, it is recommended that the Unions' request for abstention in this matter be denied as to unlawful activities taking place in both the state of Georgia and Florida. The motion is essentially bottomed on Eastern's suits in those states covering a few specific incidents. It should be noted, however, that pursuant to the holding in the *Findings Of Fact And Conclusions Of Law* and the Preliminary Injunction Order, this Court denies Eastern's request to enjoin the Union's residential picketing activities within the state of Georgia and Florida, (residential picketing is the subject of the pending Florida law suit) based on the grounds that Eastern's Amended Complaint failed to request such relief pursuant to § 109 of the Norris–LaGuardia Act. (*See, Conclusions Of Law,* at ¶¶ 18–22, 44.)

## DISCUSSION

In accordance with Bankruptcy Rule 5011(b), a motion for abstention, pursuant to 28 U.S.C. § 1334(c) requires that this Court file a report and recommendation with the District Court for disposition of the motion.

Abstention is governed by 28 U.S.C. § 1334(c) which provides in pertinent part:
(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from

abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. (2) Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction....

*Mandatory Abstention*

As previously held by this Court, this matter is a core proceeding. (*See, Findings Of Fact And Conclusions Of Law, supra,* at ¶ 6–12). Since mandatory abstention under 28 U.S.C. § 1334(c)(2) only applies to non-core proceedings, it is inapplicable in this instance. *See, e.g., In re Tidwell Industries, Inc.,* 87 B.R. 345, 348 (Bankr.E.D.Pa.1988); *In re Baptist Medical Center,* 80 B.R. 637, 645 (Bankr.E.D.N.Y.1987); *In re Sun West Distributors, Inc.,* 69 B.R. 861, 866 (Bankr.S.D.Cal.1987); *In re Allegheny,* 68 B.R. 183, 192 (Bankr.N.D.Pa.1986); *In re Blackman,* 55 B.R. 437, 445 (Bankr.D.C.1985); *In re Keyco Inc.,* 49 B.R. 507 (Bankr.E.D.N.Y.1985).

*Discretionary Abstention*

 Abstention is an "extraordinary and narrow exception" to the federal court's duty to adjudicate a controversy properly before it. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 19–27, 103 S.Ct. 927, 938–42, 74 L.Ed.2d 765 (1983), the Supreme Court identified six factors bearing on whether this "extraordinary and narrow exception" should be invoked where there are concurrent state and federal court proceedings: (1) convenience of the federal forum; (2) avoidance of piecemeal litigation; (3) the order in which the courts obtained jurisdiction; (4) whether either court has assumed jurisdiction over property; (5) the source of law for decision; and (6) whether the state court can adequately protect the rights of the party seeking federal jurisdiction. *See Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 602–03 (2d Cir.1988). No single factor is necessarily decisive; the court should carefully balance the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. at 16, 103 S.Ct. at 937.

The factors a bankruptcy court should consider when deciding whether to abstain pursuant to § 1334(c)(1) have been articulated as follows:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. Sec. 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of the asserted "core" proceeding, (8) the feasibility of severing state law claims or bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy judge's] docket, (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceedings of nondebtor parties.

*In re Republic Reader's Service, Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). Moreover, "[t]he concept of discretionary abstention involves a determination by the bankruptcy court as to whether or not is-

sues raised in the pending state court action implicate bankruptcy principles which might have a material bearing on the debtor's reorganizational efforts." *In re Texaco, Inc.*, 77 B.R. 433, 438 (Bankr.S.D.N.Y. 1987).

As noted, ALPA's motion for abstention applies at most to Eastern's complaints about defendants' conduct in Georgia and Florida since ALPA's motion relies on the separate commencement of actions by Eastern in Georgia and Florida state courts. As to defendants' illegal conduct in New York, abstention is highly inappropriate. As of the date of ALPA's motion for abstention, there were no concurrent state court actions.

■ Where there is a conflict between a bankruptcy court administering a complex reorganization and other court proceedings, equity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation. *See, In re Baldwin–United Corp.*, 765 F.2d 343, 348 (2nd Cir.1985). The bankruptcy court must also look to Congressional intent to broaden the jurisdictional scope of bankruptcy proceedings in order to bring into one forum all matters related to the bankruptcy case so as to facilitate the prompt administration of the bankruptcy proceeding. *In re Krupke*, 57 B.R. 523, 524 (Bankr.W.D.Wis.1986); *In re Cemetery Dev. Corp.*, 59 B.R. 115, 124 (Bankr.M.D. La.1986).

■ This is a core proceeding in which this Court has a palpable interest under the bankruptcy laws, this forum is convenient to the parties, and disposition of all the issues in this Court is the only way piecemeal litigation of issues important to the Eastern estate can be avoided. Moreover, in order to expeditiously administer these reorganization proceedings, it is necessary to contain in this forum all matters related to the bankruptcy. Indeed, it is hard to think of a less efficient and less convenient result than to condemn the parties to repeated, often-duplicative legal skirmishes in local courts throughout the country.

In arguing for a contrary result, defendants stress that abstention is appropriate because there are important state interests and unsettled questions of state law involved. *See, e.g., In re Double TRL, Inc.*, 65 B.R. 993, 1002 (Bankr.E.D.N.Y.1986); *In re Verrazano Holding Co.*, 86 B.R. 755, 763 (Bankr.E.D.N.Y.1988). It is obvious, however, that the issues here, though involving violations of state law, are of transcendent concern to this Court because of its responsibilities for a financially-troubled company in reorganization. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1983). The compelling interest of this Court is particularly apparent where, as here, the debtor is being plagued by wide-ranging, unlawful activities being perpetrated not just in one state, but in many, as part of a labor dispute that is not local, but national, in scope. (*See, generally, Findings Of Fact And Conclusions Of Law*, supra.)

Moreover, the issues are not, as defendants would have it, redolent with unsettled questions of state law. Fundamentally, the legal grounds being traversed have been well-charted for this Court by applicable state statutes and case law. "This case involves a relatively straightforward application of long-standing standards concerning the limited availability of injunctions under the Norris–LaGuardia Act." *In re Ionosphere Clubs, Inc.*, 103 B.R. at 419.

It should be noted that Eastern voluntarily dismissed the Georgia state court action by notice dated July 18, 1989, one day after the TRO was entered in this matter. However, this Court is satisfied that good sense and efficiency, not forum-shopping, justified Eastern's decision to pursue here *all* its complaints about defendants' illegal conduct, wherever committed. This Court earlier had presided over similar issues raised concerning IAM activities at LaGuardia Airport and also Logan Airport in Boston, Massachusetts, and it was eminently appropriate for Eastern again to seek relief from this Court on July 17, especially since its complaints concerned, in part, LaGuardia Airport and whether the IAM had violated a settlement agreement entered into in this Court on April 5. Given that by July 17 Eastern's problems with defendants were not confined to New York, and that the two

more narrowly-focused state court actions were basically dormant, and/or raised legitimate standing concerns for Eastern's maintenance of at least one of the suits, it was entirely proper for Eastern to ask this Court to address *all* its related complaints against defendants, rather than to proceed piecemeal in far-flung jurisdictions.

In recommending the denial of the Unions' abstention motion, this Court also is mindful of the fact that, in contrast to the more narrowly focused state court proceedings, this Court has conducted and concluded extended evidentiary hearings and has made substantial progress toward final resolution of the issues. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. at 21, 103 S.Ct. at 939 (consider not just which action was filed first but the amount of progress made in each). To abstain at this juncture, and relegate relitigation of the same issues piecemeal in other forums, would amount to an abandonment of this Court's "virtually unflagging obligation" to exercise jurisdiction absent the "clearest of justifications." *Colorado River Water Conservation District v. United States*, 424 U.S. at 817, 819, 96 S.Ct. at 1246, 1247.

The foregoing Report and Recommendation is hereby respectfully submitted to the District Court.